Arise, here ye, here ye, this Honorable Appellate Court for the 2nd Judicial District is now open. The Honorable Dan P. Jorgensen is silent. Your Honor, the first case on the docket this morning is 2-22-0066. The people of the state of Illinois plaintiff's appellate, D. Joshua Cavazos, defendant's counsel. Arguing on behalf of the attorney, Ms. Katie Henderson. Arguing on behalf of the appellate, Mr. Adam Strickland. Are you both ready to proceed? Yes, Your Honor. Yes, Your Honor. Then counsel when you're ready. May it please the court. My name is Katie Anderson and on behalf of the state appellate defender, I represent the appellant, Mr. Joshua Cavazos. At issue today is whether the trial court erred when it sentenced Joshua, who was 17 years old at the time of the offense, to an aggregate de facto life term of 50 years, despite its finding that he was capable of rehabilitation. This court should remand this case for a new sentencing hearing for any one of a number of reasons, because it is based on a misapprehension of the law, because it violates this court's mandate, the Eighth Amendment and the Proportionate Penalties Clause, and because it is excessive as applied to Joshua. Any of these reasons alone is sufficient to require additional sentencing proceedings. Talk about what you're saying is based upon. What was your first reason? The misapprehension of the law. Misapprehension. What law? The trial court misapprehended buffer when it found that Joshua's 50-year sentence is under that 40-year cap established by buffer, because he had already served 13 years and, therefore, would serve only an additional 32 more years. That's clearly an incorrect application of buffer, because credit for time served is not subtracted from the sentence before determining if it complies with buffer. If we don't subtract that from the sentence, are you still submitting that it is an improper sentence? We are still submitting that it is an improper sentence because it violates this court's mandate, the Eighth Amendment and the Proportionate Penalties Clause, and is otherwise excessive. So the misapprehension argument, which is the first issue on our briefs, that is a stand-alone argument. And if this court accepts it, that would be dispositive. If this court does not follow our reasoning on that, it should then continue on to the other issues. And what did it misapprehend regarding our mandate? Regarding this court's mandate, in this previous appeal, this court stated that, quote, the trial court could once again impose a de facto life sentence only if it determines that the defendant is beyond rehabilitation, end quote. That was at paragraph 25. At sentencing, the court below expressly found that Joshua was capable of rehabilitation. The trial court stated that there is some rehabilitation potential in this gentleman. It also stated that irretrievable and incorrigible, those words are not appropriate here to describe Joshua. So the trial court expressly found that he had rehabilitative potential. But the trial court then imposed a de facto life sentence anyway. It is well settled that when a reviewing court issues a mandate, it vests the trial court with the jurisdiction to take only such and void for lack of jurisdiction. And therefore, Joshua's sentence does violate this court's mandate and exceeds the trial court's jurisdiction. But the trial court found that he was not, he was able to be rehabilitated. That is correct. The trial court found that he was capable of rehabilitation and then imposed the de facto life term. And that's the violation. Well, that's the question here. The whole question is, was it a de facto life sentence? And our argument is yes, that it was a de facto life sentence. It's above the 40-year line established by buffer. And the trial court below found that it was not a de facto life term for two reasons. Number one, it complied with buffer. So that's the misapprehension of the law argument. The trial court misapprehended the law there. The second reason why the trial court found that the sentence complied with buffer was because he would be eligible for parole. But the statute, okay, go ahead, I'm sorry. The statute that provides parole opportunities for juvenile offenders who are sentenced as adults for homicide offenses does not provide Joshua with a meaningful opportunity for relief. So the possibility of parole here does, isn't the structure of parole as set forth by the legislature beyond our prerogative here? This court cannot alter the structure of parole as set by the legislature, but this court can find that that statute is unconstitutional. Where have you raised that? That was raised, I believe, in our opening brief, where we argued that the extreme limitations on parole opportunities fall far outside our country's evolving standards of decency. How is that a constitutional argument? So basically, under the Eighth Amendment, it's the evolving standards of decency that determine what is permissible under the Eighth Amendment. In Penley v. Lanau, the United States Supreme Court said that in determining the evolving standards of decency, which inform what is permissible under the Eighth Amendment, courts have looked to objective evidence of how our society views a particular punishment, and they acknowledge that legislation is the clearest and most reliable objective evidence of our country's values. So we can look at legislation to determine whether or not it complies with the Eighth Amendment. Here, our parole statute doesn't comply with the Eighth Amendment because it doesn't offer a meaningful opportunity for parole. What would be meaningful? Quite frankly, Illinois' statute is an outlier nationwide, and we wait. Basically, across the country, it's consistent that states require homicide offenders to wait 20 years before applying for parole. So Illinois is on track with the country in that regard. But after that is where we veer off course. Illinois provides a homicide offender with only two opportunities to provide for parole. And after applying the first time 20 years in, the defendant must wait an additional 10 years to apply the second time. That second application is the final opportunity in Illinois to apply for parole. The second, the 10 years waiting, first opportunity at 20 and then 10. Your client has not yet had one parole opportunity. So tell me the relevance at this point of waiting 10 years or not without knowing the outcome of his first opportunity for parole. The relevance at this point is because without any opportunities for parole, Joshua will be required. No, he does have an opportunity for parole at 20. So my question is, what is the relevance of the fact that it's an additional 10 before he's had his opportunity at 20? Should he have to wait until he's had that 20-year opportunity and been denied before you can make this argument? No, because at that point, the decisions of the parole board are not subject to appeal. So if he is denied his parole opportunity, that's it. He has to wait an additional 10 years. No, the point is if he's denied at 20, then you could raise the constitutional argument that waiting 10 is too long. Respectfully, Your Honor, when we compare the Illinois statute to the other statutes nationwide, though, no other parole statute requires that 10-year gap. The other states permit unlimited opportunities to apply for parole, and those defendants only have to wait a couple years. So Illinois statute is an outlier nationwide. And because Illinois statute is an outlier nationwide, it therefore violates the evolving standards of decency as demonstrated by nationwide legislation. And Penry-Villanoff says that the nationwide legislation and that national scope is what we should look to when determining whether the parole statute is constitutional under the Eighth Amendment. Is it the limitation in the number or the delay or both? It is not the initial 20-year delay that is the problem. It is both the number of opportunities and the mandatory 10-year wait in between the first and second attempts. And both of those things are the constitutional issue with the Eighth Amendment. So if Illinois is an outlier, what is the next state in terms of time? Are there other states that are 9 years or are all the other states 2 or 3 years? There are other states that require 5, and that's the next highest gap. Some states require a 5-year wait. And do other states have a limit of only 2? No, the other state parole opportunities are unlimited. Illinois is the only state that caps it at 2. Now, to what extent are you asking us to rewrite the statute versus declaring this unconstitutional is going to be based on our determination that the legislature should have made a different policy decision? You do not have to rewrite the statute. You could hold that the trial court's reasoning that the opportunity for parole renders his sentence unconstitutional is incorrect. So you don't have to rewrite the statute. You just have to say it doesn't operate in the manner in which the trial court believes that it did. Many of the cases say that to remedy the Eighth Amendment, the defendant has to have an opportunity for parole. Doesn't he have an opportunity for parole here? And isn't it basically in the hands of the defendant to control his conduct? It is in the hands of the defendant to control his conduct. However, a defendant cannot control the parole board or the actions of the parole board. While judicial detraint, there's no guarantee. It was never a part of the U.S. Supreme Court to say that you have a guaranteed right of release. You have an opportunity for a hearing. That's what's required. It is correct that he would have the opportunity for a hearing. However, while sentencing proceedings are subject to judicial review, parole board proceedings are not. That means there is accountability for judges as to how they apply Miller and its progeny, but the parole board essentially does not have that same accountability. If the parole board — Don't you think the U.S. Supreme Court was aware of that when it required opportunity for parole? Yes, but respectfully, Illinois statute is an outlier. So he only has these two opportunities. If the parole board decides to throw Miller out the window at his only two opportunities, that's it. If he had more opportunities for parole, improper application of Miller to parole proceedings or at the actual parole hearing might not be such a problem. And although Illinois has not yet — So if he has more opportunities, it's more likely he'll get a board that is sympathetic to Miller? Why wouldn't the hearings be the same, the same outcome with the same evidence? Because different sentencers view different facts differently, which is something that the United States Supreme Court discussed extensively in People v. Jones, is that different individuals might choose to view different facts in a different manner and evaluate them in a different way. Also, the other states that have evaluated it have determined that the Miller factors must be considered at a parole hearing. And that's because in Montgomery, the United States Supreme Court stated that the opportunity for police — or, excuse me, the opportunity for release on parole should be afforded to those who demonstrate the truth of Miller's central intuition and that they must be given the opportunity to show that their crime did not reflect irreparable corruption. And that necessarily envisions a parole board's consideration of the juvenile offender's youth per Miller, which is why the other states that have actually considered this issue have found that Miller factors must be considered at the parole board hearing if the offender was a juvenile. But isn't it always subject to discretion? I have to consider a factor, but how I consider it and render a decision, that's not dictated. That is correct. So any parole board can consider these factors and come up with different conclusions? That is correct. However, at Joshua's parole hearing, under Illinois law, the determinative factor at parole hearings currently in Illinois is the seriousness of the offense. So considering that as the determinative factor at Joshua's parole hearing will contradict Miller because it will focus on the facts of the offense and not the facts specific to Joshua and how he has rehabilitated himself. That is particularly significant in a case like this where the trial court has already found that he is indeed capable of rehabilitation. He may have the opportunity for the victim's families to weigh in at a parole hearing as well, correct? Correct. As they do in sentencing. Right. So it has been argued that I would also like to take this opportunity to address People v. Beck. People v. Beck is not instructive as to the parole issue here. Beck addressed the statute. Was Beck a first-degree murder case? No, Beck was a non-homicide offense, Your Honor, and that is precisely the point. The parole provisions that apply to the defendant in Beck are different provisions that apply to Joshua. The defendant in the Beck case will be offered earlier and more frequent parole opportunities than Joshua. He will receive three parole chances, five years apart, within the first 23 years of his sentence. The Beck court did not consider whether Illinois' limitations on parole for juvenile offenders who were convicted of first-degree murder violated the evolving standards of decency, because that wasn't an issue in that case. So the Beck court also did not address whether the under-21 parole law contradicts Miller by improperly focusing on the seriousness of the offense as determinative, because the defendant also did not raise that issue here. So Beck is distinguishable and is not controlling as to whether parole provides him with a meaningful opportunity for release. So it is our position that the parole statute does not provide for a meaningful opportunity for release. I would also like to clarify that even if this court finds that the parole statute satisfies the Eighth Amendment, it can still find that the parole statute does not satisfy the Proportionate Penalties Clause. Your Honors, may I have a moment to finish my point there and briefly conclude? Briefly conclude, yes. Thank you. When we look at whether something violates the Eighth Amendment, we look to the evolving standards of decency nationwide. And when we are trying to determine if a statute violates the Proportionate Penalties Clause, we look to whether it violates the evolving standards of decency in this state. So those are two different standards. For these reasons and the reasons stated in our brief, we respectfully request that this court remand this case for additional sentencing proceedings. Thank you. Thank you. Calton. May it please the Court, Counsel, Adam Peref on behalf of the people of the State of Illinois. Defendant first argues that he doesn't have a meaningful opportunity because he doesn't have unlimited chances to file petitions within the Parole Board. The State would like to note that his projected release date is May of 2054. So even assuming he files two petitions with the PRB Board, he will be released before he even gets the opportunity to file a third petition. And as the statute, the new parole statute states, release on MSR is not affected by any finding by the Parole Review Board. The State would also like to point out. Let me ask you this. Are you going to concede that you can't take the days that he had served and give him credit for those and then start over on the sentencing as the trial court stated? So I would like to point out that a reviewing court shouldn't really focus on a few words or statements made by the trial court, but it should consider the record as a whole. And the defendant's position on appeal is that the trial court allegedly determined that this wasn't a de facto life sentence because of the fact that he gets day-to-day good conduct credit and he also references that he's already served 13 years of his sentence. We disagree with that position. Although the trial court may have been an artful, if the trial court was determining that he didn't receive a de facto life sentence, why did he apply the Miller factors? And we know Miller applies to de facto life sentences. I guess I'm going to ask the question again. Would you concede, if you think, if you look at it the same way as the defense, would you concede that a trial court cannot take the credit for time served, apply that, and then start over again on sentencing? Would you concede that that's improper? That's not what the court did in this case. I didn't ask you that. I asked you if you agreed that that's what the court did, would you submit that that's improper? Yes or no. I'm just trying to clarify what your question is. I'm not asking you to clarify it. I'm not understanding your question, so that's why I'm asking this. Go ahead. Is your question that if you get resentenced that the 20-year clock starts all over again? Yeah. Not 20 years. Are you talking about for parole? Yes. I'm talking about for the sentence. The way the judge said it here, the way that the defense interpreted it, I'm saying if you agree with the way the defense interpreted it, was the judge incorrect in saying, oh, if you've given credit for 13 years, it's not going to be de facto? Can you give credit for time that was already served upon the resentencing? That is correct. That would be error, but it is the state's position that that's not how the state is interpreting it. Because if the trial court determined that this wasn't a de facto life sentence for all that, for all those reasons you stated and the defense stated, it wouldn't have applied the Miller factors. Miller applies to de facto life sentences. It is clear that the trial court determined that this was a life sentence, and he applied the Miller factors before imposing sentence. So if you take the defendant's interpretation, then the court wasn't obligated to apply Miller if it did not consider it a de facto life sentence. It clearly did, and the state's interpretation of the trial court's statement was really, this is not an unconstitutional de facto life sentence because he has those meaningful opportunities, such as parole. That is the state's position. What's a meaningful opportunity for parole? That's for the Illinois legislator to decide, and I would like to note that the defendant in his brief cites language within his opening brief, citing buffer, and in buffer it states, courts generally defer to the legislator in sentencing arenas because the legislator institutionally is better equipped to gog the seriousness of their offenses and to fashion sentences accordingly. It is not for this court to tell the Illinois legislator that this isn't a meaningful opportunity. And our office — It's not constitutional. Excuse me? It's simply not a constitutional statute. It is a constitutional statute, but as the court noted, the defendant even hasn't had his first hearing before the board yet, and three years before you become eligible to file your petition, the defendant can get assigned an attorney. Within six months of the parole review board, a representative from the DOC shall meet with the defendant and provide them with information about the parole hearing process and provide personalized recommendations. The inmate has one week to file a written response. Counsel, this is not going to happen for seven more years from today. Is this something that should have been considered at the sentencing at the beginning? Whether the parole board provides a meaningful opportunity? Right. The meaningful opportunity being it appears that the 20-year wait is not really being contested. That seems to be common. Yes. But one more hearing limitation that Illinois has in the 10 years between. Yes. The defendant raised that issue within the trial court below, and the trial court held that it does give a meaningful opportunity. The court considered that, and that's what it concluded. Right. I'm talking in the context of being able to challenge this now. You're not arguing that he has to wait seven more years to have a parole hearing and have that hearing go the other way on him to be capable of challenging it. Well, yes, there is no harm. Nothing has happened yet. What is there to appeal? What decision are you appealing? How about if you say they're appealing the fact that he didn't get a third opportunity to file a petition when he's going to get released before that even happens? No. How about that he didn't make an incorrigibility finding? Yes. So I'd like to point out to the supervisory order that the Illinois Supreme Court issued. It said the appellate court is directed to consider the effect of this court's opinion and buffer. The issue of whether a defendant's sentence constitutes a de facto life sentence in violation of the Eighth Amendment. The Illinois Supreme Court supervisory order did not mention an analysis under the Proportionate Penalties Clause of the Illinois Constitution. I'd also like to point out to this court's mandate remanding the cause and the language it used. Within that order it stated, we conclude that the defendant's sentence violates the Eighth Amendment. Didn't conclude that it violates the Illinois Constitution, the Proportionate Penalties Clause specifically, and it remanded for compliance under Eighth Amendment and under Miller. At no point did this court instruct the trial court to consider the Proportionate Penalties Clause. It was strictly an analysis under the Eighth Amendment. Doesn't Miller require that? Sorry, doesn't Miller require what? Finding? Not pursuant to Jones v. Mississippi. No, Jones v. Mississippi had a clause in there that gave an out to each state, didn't it? Didn't Jones v. Mississippi say, you don't have to make that finding? However, if any state wants to require that finding, they can do so. Has the state of Illinois, do you have a case that says we don't have, that we have to comply with Jones? Under the Supremacy Clause, you do, and I cite, I cite it in the motion. But in Jones, they say to each state, you do not have to follow not giving, not finding the incorrigibility. It's giving each state an out. So the Supremacy Clause wouldn't apply to that particular factor. What state court has said that we must follow Jones and that a finding of incorrigibility is no longer needed in the state of Illinois? There is no case law currently interpreting Jones with new sentences under after 2019. But surely, the cases that Illinois has issued, it's all been under the Eighth Amendment and Miller and its progeny. It all comes under that, the U.S., the United States Constitution, the Eighth Amendment. There's no case that holds, oh, the Illinois Constitution. There's no case where a court has interpreted the Proportionate Penalties Clause as separate from the Eighth Amendment requiring this separate finding. The court here reviewed Jones v. Mississippi, and it was issued after this court's mandate in November of 2020. It came out in April of 2021. And if you're reviewing a sentence under the Eighth Amendment, and we have the United States Supreme Court stating under the Eighth Amendment, not in regards to any specific state constitution or law, you don't need this finding. And we have an order from this court stating the trial court to analyze and issue a sentence in compliance with the Eighth Amendment. There is no wrong here that the trial court did. But even assuming it did. What did the trial court not do that required the Supreme Court and then us to issue a mandate? Well, pursuant to the United States Supreme Court, you don't need to make an explicit or an implicit finding of incorrigibility before imposing a life sentence. What case? Jones v. Mississippi. And does Jones v. Mississippi have a carve-out that allows states to do what they want to do with the incorrigibility findings? Yes, and Illinois, the legislator adopted the Miller findings, right? They codified the Miller findings. If the legislator wanted a permanent finding of incorrigibility before imposing a life sentence, it would have done so when it codified the Miller factors. It didn't. But even assuming that this court disagrees that somehow the Illinois Constitution provides that, states, pursuant v. Montgomery v. Louisiana, states may not litigate sentences when a defendant is given the meaningful opportunity for hearing for parole. And that's what we have here. So even assuming this court takes that position, pursuant v. Montgomery v. Louisiana, the state of Illinois has given the defendant an opportunity for a hearing for parole. That is what Miller is prohibiting, life sentences without opportunity for parole. The defendant here has an opportunity for parole. Here, opposing counsel has not conceded that he doesn't have an opportunity for parole. Their main argument is that there's a possibility that the board may deny his petition. Well, isn't their argument really that it's not meaningful when it's one more? You wait 20 years, you have one. Yes. And you have to wait 10 years, and that's the last one. Well, again. And neither one is appealable. Right. Well, again, the defendant in this case does not have the chance to file a third one because he will be out before that ever happens. Well, I'm not sure that cuts your way. Isn't that highlighting that it's not meaningful if you have to wait so long that you only get one opportunity before you're actually released? Here's the thing. To rehabilitate, you need time. Right? You need a juvenile. Well, 20 years is not contested, so waiting 20 years. Yeah. I think the substance of their argument really is that it's not meaningful if you're really only getting one bite of the apple after that 20 years. Well, he's getting two bites out of the apple. And remember, the case also states an opportunity for a parole hearing, not opportunities. It's an opportunity where I have not encountered. Right. Meaningful must have some meaning. Yes. And the legislator has determined that this is meaningful. To buffer, we look at what our legislator has determined what is meaningful. And this is, I like to point out to like the comments made by Senator Hammond when he introduced this new parole statute. He said. She. Excuse me? She. Oh, excuse me. She. This bill continues our general response to the U.S. Supreme Court's decision against Miller v. Alabama. So our Supreme Court, I mean, our Illinois legislator was aware of Miller, of the cases subsequent to it. And it was tasked of providing juveniles, individuals who are sentenced as juveniles, as a way to provide a meaningful opportunity. That's the purpose and intent of this statute. And Senator Hammond, she said. We're creating a parole system that would permit long sentences to be revisited at 10 years or 15 or 20 years, in this case, depending on the crime. Because let's not forget, one of the sentencing factors is the seriousness of the offense. Which is why the fact case really is different here in light of the fact it's distinguishable because it's not a first degree case. I'll go to the back. I just want to finish my quote here. 20 years is appropriate, given the severity of the offense. In this case, the 17-year-old defendant took the life of a 15-year-old. That 15-year-old will never get to realize those chances, that life, that promise that boy had. And so it is appropriate to wait 20 years, given the severity of the offense. The new parole statute gives 5 or 15 or 20 years, according to the crime. This allows for the juvenile defendant to serve some time for first degree murder, in this case, of a 15-year-old boy. Whose victim's family will never see that boy get married or fulfill his potential. 20 years pursuant to the Illinois legislator is meaningful when you commit first degree murder. None of the other sentencing factors, none of the other factors that the court has discretion to consider, fall by the wayside. So your bottom line is it's the legislature's prerogative to decide what is meaningful. Absolutely. We have determined this is meaningful and we should accept that and not question it. Is that the bottom line? The bottom line is, if you're questioning it, we look at it. Is 20 years for first degree murder, waiting 20 years? Is that unconstitutional? You get one opportunity, you get an opportunity. Here, the defendant gets two. And again, I'd like to emphasize that the defendant can't file a third one because he will be released. And the state relies on the arguments presented within its brief. And we respectfully request that this honorable court affirm defendant's sentence for the slaying of a 15-year-old boy. Thank you. Thank you. Your Honor, I have just a few brief points on rebuttal. As to the mandate issue, as to whether the trial court correctly complied with this court's mandate,  under the Illinois Supreme Court case law, it doesn't matter if this court's mandate was legally erroneous. The trial court was still bound to comply with that mandate regardless. This court's mandate clearly stated that the trial court was only to impose a de facto life term if it found that Joshua was not capable of rehabilitation. What about intervening events, though? There were no intervening events. Is this a new statute? That does not matter under the case law. Daily XREL or People XREL Daily v. Schreier holds that it is this court's mandate that is controlling and any decision that is outside the boundaries of that mandate has exceeded the trial court's jurisdiction. There also has been no change in the law that would abrogate this court's prior decision. This court's prior decision in Joshua's case was well-rooted in Eighth Amendment precedent and also cited Illinois case law. So there has been no change in the law that would alter or change that previously written, well-reasoned decision. As to the misapprehension issue, the trial court was not simply being an artful with its language. It stated, quote, actual time from this sentence, and as I read buffer, it's from when I sentenced him. Actual time in, therefore, is about 32 years, eight years under buffer. This was not the trial court being an artful with its language. This was a clear misapplication of buffer as demonstrated by this. But he does clearly, then, consider Miller factors. He does consider Miller factors. However, the legal standard when the trial court misapprehends the law at sentencing, the standard that the reviewing court should apply is a misapprehension of the applicable law requires resentencing when it appears that the mistaken belief of the judge arguably influenced the sentencing decision. And this standard is met when the trial judge's comments show that the trial judge relied on the mistaken belief or used the mistaken belief as a reference point in fashioning the sentence. Here, the trial court. What case did you say? That is actually two different cases. The arguably influenced standard appears in People v. Eddington, 77 Illinois 2D41 at 48, which is an Illinois Supreme Court decision from 1979. We also see it again in People v. Housman, 287 Illap 3D at 1071 to 1072, which is a fourth district decision. The language about when the trial judge's comments show that the trial judge, the standard is met where the trial judge's comments show that the trial judge relied on the mistaken belief or used the mistaken belief as a reference point in fashioning the sentence. That is People v., I'm going to butcher this pronunciation, People v. Mireks, M-Y-R-I-E-C-K-E-S, 315 Illap 3D, 478, that's at 483 to 484, and that's a third district case. Here, the trial court referenced twice that the sentence complied with buffer because he would only do an additional 32 years after applying sentence credit. They commented on that twice, and it also appeared to support the trial court's belief that its sentence was constitutionally firm. Therefore, the trial court relied on that belief. Therefore, the record does not establish that the sentence is based on a proper understanding of the applicable law. And under due process, my client should obtain a new sentencing hearing where it is clear that the trial court understands the law that is supposed to apply to his case. If you have no more questions, I will briefly conclude. I would like to emphasize that the trial court did correctly find that Joshua is capable of rehabilitation. He's made great strides in that respect, and we would appreciate any sort of remedy that this court deems appropriate for Joshua. Any additional questions? I have no further questions. Do you have any additional questions? Thank you very much. Thank you, Your Honors. All right. We will be in recess then until 10 and 1 3rd.